[No. A106426. First Dist., Div. Three. Mar. 20, 2006.]

LINCOLN PROPERTY COMPANY, N.C., INC., Plaintiff and Appellant, v. THE TRAVELERS INDEMNITY COMPANY et al., Defendants and Respondents.

908

**COUNSEL**

Manly & Mcguire and Kevin M. McGuire for Plaintiff and Appellant.

Melendez & Vaca, Morison-Knox Holden Melendez & Prough, William C. Morson-Knox, Michael W. Melendez and Robert J. Scott, Jr., for Defendants and Respondents.

**OPINION**

**POLLAK, J.**—May an insured bring separate actions against its insurer for breaching its obligation to defend a claim against the insured and for breach of the implied covenant of good faith and fair dealing in the handling of the claim? We hold that it may not, because the two claims involve breach of the same primary right, precluding the insured from splitting the cause of action. Hence, we affirm the ruling of the trial court sustaining a demurrer to the insured's complaint in the second of the two actions.

Plaintiff Lincoln Property Company, N.C., Inc. (Lincoln), appeals from the judgment dismissing its complaint against The Travelers Indemnity

Company and The Travelers Indemnity Company of Illinois (Travelers). Lincoln's complaint alleges, among other things, that Travelers breached the covenant of good faith and fair dealing implied in its insurance policy by acting in an unreasonable and untimely manner in responding to Lincoln's demand for a defense in an underlying personal injury action. The trial court sustained Travelers's demurrer without leave to amend on the ground that the present action is barred by the judgment entered on a cross-complaint in the underlying action, in which Lincoln sought damages from Travelers for breach of the duties to defend and indemnify against the injured party's claim. Lincoln contends the trial court erred in holding that it had impermissibly split a single cause of action. We disagree.

FACTUAL AND PROCEDURAL HISTORY[1]

This appeal follows a lengthy course of litigation arising out of a work-related injury suffered at the Larkspur Court apartment complex. The Larkspur Court is owned by Larkspur Courts Associates (LCA), a joint venture comprised of Prudential Insurance of America (Prudential) and Lincoln. LCA contracted with Lincoln to manage and maintain the Larkspur Court complex.

In June 1998, Lincoln, on behalf of LCA, entered into a painting contract with Krata, Inc., doing business as Five Star Services (Krata). The painting contract required Krata to paint and repair siding on 25 buildings in the Larkspur Court complex. The contract required Krata to carry general liability insurance in an aggregate amount of no less than $2 million. On June 23, 1998, Travelers issued a comprehensive general liability policy to Krata. The policy, with a limit of $1 million per occurrence, named LCA as an additional insured. The policy also included a "Blanket Additional Insured" endorsement that added as an insured "any person or organization . . . whom you have agreed in a written contract, executed prior to loss, to name as additional insured." The painting contract required Krata to name LCA and Lincoln as additional insureds on its liability policy.

On July 13, 1998, Michael Patton, a Krata employee, fell from the roof of a building at the Larkspur Court complex. On February 16, 1999, Patton filed an action in the Marin County Superior Court against Lincoln, LCA, and Prudential to recover damages for injuries he sustained in the fall (the Patton action). In April 1999, Lincoln tendered defense of the Patton action to Krata and Travelers.

---

[1] The following factual and procedural history is drawn in large part from the prior nonpublished opinion of this court in *Lincoln Property Company, Inc. v. The Travelers Indemnity Company of Illinois et al.* (Sept. 17, 2003, A099192) [nonpub. opn.].

Travelers did not respond to Lincoln's tender. Therefore, in May 1999, Lincoln retained the law firm of Freberg & Manly, later Manly & McGuire, to answer Patton's complaint. Lincoln paid for its own defense through September 1999, when LCA's insurer, Royal/Sun Alliance Insurance Co. (Royal), accepted tender of the claims and began providing a defense. Royal retained Lynch, Gilardi & Grummer to represent Lincoln, LCA, and Prudential.

In October 1999, Lincoln filed in the Patton action its first amended cross-complaint against Krata and Travelers. The cross-complaint alleged Travelers had breached its duties to defend and to indemnify Lincoln and sought declaratory relief as to its coverage under the Travelers policy. In July 2001, Travelers denied that Lincoln was entitled to coverage under its policy but nonetheless agreed to participate in Lincoln's defense with a reservation of rights.

In August 2001, Lincoln filed the present bad faith action in San Mateo Superior Court, alleging that Travelers had breached the covenant of good faith and fair dealing, violated Business and Professions Code section 17200 and breached its fiduciary duties, based on the manner in which Travelers had responded to Lincoln's tender in the Patton action. Travelers demurred on the ground that there was another action pending between the same parties on the same cause of action (Code Civ. Proc., § 430.10, subd. (c)) and the action was stayed pending resolution of the Patton action.

In October 2001, Travelers paid $1 million to settle Patton's claims and obtained a general release in favor of all parties. On February 14, 2002, Travelers filed a motion for summary judgment on Lincoln's cross-complaint. Travelers asserted that even if Lincoln was insured under its policy, Travelers had satisfied its indemnity obligation by securing the settlement, and that Lincoln could not recover for breach of the duty to defend because Royal had provided Lincoln with a complete defense, precluding any damages. Following the submission of Lincoln's opposition, Travelers paid Lincoln $7,668.12 to reimburse it for attorney fees and litigation costs for the period between May and September 1999, when Royal undertook its defense. Subsequently the trial court granted Traveler's summary judgment motion, rejecting Lincoln's contention that there were triable issues as to its claim for additional damages. On appeal, this court affirmed the judgment on its merits, but held that the trial court had erred in deeming Travelers the prevailing party for the purpose of recovering costs.

Following remand of the Patton action, Travelers filed a second demurrer in the bad faith action. Travelers contended that Lincoln's complaint is barred because Lincoln "impermissibly splits its cause of action by bringing the

same claims for the alleged violation of the same primary right (defense and indemnity under the Travelers' insurance contract)" in both the bad faith and Patton actions.[2] The trial court sustained the demurrer without leave to amend, concluding that "[u]nder the doctrine of res judicata, this action is barred by the final judgment rendered . . . in [the Patton action]."[3] Lincoln timely appealed from the resulting judgment.

## DISCUSSION

On appeal from a judgment after a demurrer is sustained without leave to amend, we review the trial court's ruling de novo, exercising our independent judgment on whether the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494 [82 Cal.Rptr.2d 368].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Travelers asserts that the demurrer was properly sustained because Lincoln impermissibly split a single cause of action. Travelers argues that Lincoln's claims for breach of the covenant of good faith and fair dealing and for breach of the duty to defend arise out of the same primary right, so that the present action is barred by the final judgment in the prior litigation. Lincoln argues that the two claims are "separate, distinct claims which do not involve the same primary right."

---

[2] Travelers also argued that its demurrer should be sustained because the court in the Patton action "determined that Travelers had not breached its insurance contract [and] that finding collaterally estops Lincoln from re-litigating, under any guise, the same alleged breach in this action." We do not reach the merits of this argument in light of our conclusion that the demurrer was properly sustained on the alternative ground of res judicata.

[3] The parties dispute whether the trial court was correct in stating that the judgment was entered in favor of Travelers in the underlying action, in view of this court's determination in the prior appeal that Lincoln was the prevailing party for the purpose of awarding costs. The issue is irrelevant, however, to the question of whether Lincoln was required to prosecute its bad faith claim in the prior litigation. (See *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 895–897 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*) [the plaintiff's second suit for damages resulting from breach of contract barred by judgment entered in the plaintiff's favor in first action for declaratory relief and specific performance on same contract].)

■ " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them . . . . [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action. [¶] A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' " (*Mycogen, supra,* 28 Cal.4th at pp. 896–897, fn. & italics omitted.)

■ "California's res judicata doctrine is based upon the primary right theory." (*Mycogen, supra,* 28 Cal.4th at p. 904.) "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] . . . [Citation.] [¶] As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' [Citation.] [¶] ■ The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata [citation]. The latter application of the primary right theory appears to be most common: numerous

cases hold that when there is only one primary right an adverse judgment in the first suit is a bar even though the second suit is based on a different theory [citation] or seeks a different remedy [citation]." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681–682 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) "Under this aspect of res judicata the prior final judgment on the merits not only settles issues that were not actually litigated but also every issue that might have been raised and litigated in the first action. [Citations.] It also precludes litigation of the same cause of action on a different legal theory or for different relief." (*Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446 [164 Cal.Rptr. 913].)

In *Mycogen, supra*, 28 Cal.4th at page 905, the court held that the plaintiff's claim for specific performance and declaratory relief prosecuted to judgment in one action and its claim for damages asserted in a second action were based on the same primary right so that the second action was barred by res judicata. The court reiterated the well-established rule that "a judgment in an action for breach of contract bars a subsequent action for additional relief based on the same breach." (*Ibid.*) The court rejected the plaintiff's argument that a plaintiff may seek to recover specific performance in one action and damages for delay in commencing performance in another action. While a plaintiff may be entitled to both types of recovery, "a plaintiff requesting both specific performance and delay damages must request both remedies in the initial proceeding . . . . [A] decree for specific performance bars a subsequent action for monetary relief based on the same breach of contract, even if this subsequent action seeks to recover for delay in performance occasioned by the litigation. A plaintiff is 'bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another.' " (*Id.* at p. 906, fn. omitted.)

The same rule applies here. Contrary to Lincoln's contention, the claim for breach of the covenant of good faith and fair dealing is part of the same primary right asserted in Lincoln's prior action for breach of the duty to defend. Lincoln's complaint in the present action alleges that Travelers breached the covenant of good faith and fair dealing because it unreasonably and without cause "failed and refused to conduct an investigation into the facts which gave rise to the claim asserted in the complaint in the underlying Patton action; [¶] . . . failed to respond to plaintiff's tender of defense in a reasonable or timely manner . . . ; [¶] unreasonably and narrowly interpreted the Travelers policy, in a manner calculated to deny benefits due to Lincoln under the policy . . . [¶] unreasonably delayed, and ultimately failed to pay for the defense of the complaint in the underlying Patton action." Lincoln alleged in its cross-complaint in the Patton action, of which the trial court took judicial notice, that Lincoln had tendered the matter to Travelers and that Travelers had "failed and refused to respond to the tender of Lincoln or otherwise honor their contractual obligations as stated above to provide a

defense and indemnity for the claims and damages of [Patton]." Lincoln argues, "The primary right asserted in the Patton action was Lincoln's right to receive express contract benefits and Travelers simple failure to perform under the contract—that is, Travelers' duty to pay for, defend and settle the Patton case against Lincoln. The rights being asserted in the bad faith action are those associated with Travelers' duty to deal fairly with Lincoln, to not delay, to diligently investigate Lincoln's claims, to protect its interests as it would its own, to diligently communicate with Lincoln about its coverage position, etc., none of which highlight the actual failure to perform but the separate and distinct failure to reasonably handle Lincoln's tender even if it does eventually perform." In sum, Lincoln argues that "[t]he focal point here is *how* the insured was treated during the process and whether the insurer unreasonably withheld benefits regardless of whether or not benefits are ultimately provided."

■ In *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147–1148 [271 Cal.Rptr. 246], the court examined the nature of the implied covenant of good faith and fair dealing. "The covenant of good faith and fair dealing is implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed. [Citation.] . . . [¶] . . . An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. [Citation.] The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need. [Citation.] Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims. Thus, an insurer must investigate claims thoroughly [citation]; it may not deny coverage based on either unduly restrictive policy interpretations [citation] or standards known to be improper [citation]; it may not unreasonably delay in processing or paying claims [citation]." (*Ibid.*) ■ The court went on to explain that "[t]he covenant of good faith and fair dealing is implied in law to assure that a contracting party 'refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement.' [Citation.] In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it frustrates the insured's *primary* right to receive the benefits of his contract—i.e., prompt compensation for losses. Absent that primary right, however, the *auxiliary* implied covenant has nothing upon

which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." (*Id.* at p. 1153.)

*Purcell v. Colonial Ins. Co.* (1971) 20 Cal.App.3d 807 [97 Cal.Rptr. 874] is also instructive. In that case the court considered whether an insurance company's failure to settle within policy limits gives rise to a single cause of action or two causes of action, "one for a personal tort and one for breach of contract." (*Id.* at p. 811.) Relying on *Comunale v. Traders & General Ins. Co* (1958) 50 Cal.2d 654 [328 P.2d 198] and *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], the *Purcell* court concluded that there was only "a single cause of action for a wrongful failure to settle within policy limits, which cause of action can give rise to two forms of damages: (1) Compensation for pecuniary loss, and (2) general damages for mental distress." (*Purcell v. Colonial Ins. Co., supra*, at p. 812.) The court held that an insured who had assigned his claim for breach of the duty to settle to a third party could not "split" the cause of action and separately pursue a claim for nonassignable damages (i.e., emotional distress and punitive damages) incurred as a result of the same breach of the duty to settle. (*Id.* at p. 814.)

■ Similarly, there is but one cause of action arising out of an insurer's breach of the duty to defend. The primary right is the right to obtain performance of the insurer's promise to provide a defense in a reasonable and timely manner. The insurer's obligation to provide a defense is an explicit provision of the contract, and the insurer's obligation to act reasonably and in a timely manner is part of the implied covenant to do so in good faith. Insofar as relevant to Lincoln's claim, Travelers's duty "to deal fairly with Lincoln" includes the duty to diligently investigate and pursue Lincoln's defense that the policy obligated it to provide. The conduct that constitutes breach of the duty to act in good faith, though not necessary to establish breach of the duty to provide a defense is, in fact, the same conduct that gives rise to a breach of the duty to defend. The resultant harm from breach of the duty to defend and from the supplemental breach of the implied covenant—whether defense costs or emotional distress—is the same. The fact that damages for breach of the duty to defend are limited to contract damages while breach of the implied covenant of good faith and fair dealing may also entitle the insured to recover tort damages (*Crisci v. Security Ins. Co., supra*, 66 Cal.2d at pp. 433–434) does not alter the fact that all such damages arise from breach of the same contract by the same conduct. As in *Purcell v. Colonial Ins. Co., supra*, 20 Cal.App.3d 807, the fact that the cause of action gives rise potentially to both tort and contract forms of relief does not alter the fact that both claims arise out of the breach of the same primary right.

Under its cross-complaint in the Patton case, Lincoln obtained some recovery for Travelers's breach of the duty to have provided a timely defense.

The additional damages Lincoln now seeks to recover arise out of the same failure to assume Lincoln's defense. These additional damages could and should have been pursued in the prior litigation. Lincoln's claims for violation of Business and Professions Code section 17200 and for breach of fiduciary duty reassert under different theories of liability the same cause of action based on the same primary right. Thus, the demurrer was properly sustained to these causes of action as well.

Lincoln contends it was not required to prosecute its bad faith claim in conjunction with its breach of contract claims in the Patton action because it "was not apprised of the tortious conduct undertaken by Travelers . . . until well after the cross-complaint for breach of contract/declaratory relief was filed and the case [was] well under way in Marin County" and that Code of Civil Procedure section 464 precluded it from amending the cross-complaint to allege "new causes of action."

The trial court has discretion to allow amendments to the pleadings "in [the] furtherance of justice." (Code Civ. Proc., § 473, subd. (a)(1).) "This discretion should be exercised liberally in favor of amendments, for judicial policy favors resolution of all disputed matters in the same lawsuit." (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1047 [261 Cal.Rptr. 857].) Moreover, contrary to Lincoln's suggestion, "it is irrelevant that new legal theories are introduced as long as the proposed amendments 'relate to the same general set of facts.' " (*Id.* at p. 1048.) Likewise, "[p]ermission to file a supplemental complaint is in the discretion of the trial court, provided it is in furtherance of and consistent with the original complaint and is not a new or independent cause of action." (*Stephani v. Abbott* (1934) 137 Cal.App. 510, 516 [30 P.2d 1033], citing Code Civ. Proc., § 464.) Lincoln's bad faith claim does not state a new cause of action but is dependant upon and arises out of Travelers's breach of the duty to defend. The fact that some of the objectionable conduct did not occur until after the cross-complaint was filed did not preclude Lincoln from litigating Travelers's liability within the original action.

Finally, we find no abuse of discretion in the trial court's denial of leave to amend. Although Lincoln has consistently requested leave to amend, it has never suggested what facts it is prepared to allege that would cure the defect in its complaint. There is nothing in the record that suggests that Lincoln could amend its complaint to state a cause of action which would not similarly be barred by the judgment in the prior Patton action.

## DISPOSITION

The judgment is affirmed. Travelers shall recover its costs on appeal.

McGuiness, P. J., and Siggins, J., concurred.