Filed 12/4/14  Pinkins v. Stempinski CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TONYA PINKINS, | |
| Plaintiff and Appellant, | E058564 |
| v. | (Super.Ct.No. RIC10023978) |
| MERIDITH STEMPINSKI et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia and Paulette Barkley, Judges.[1]  Affirmed.

Tonya Pinkins, in pro. per., for Plaintiff and Appellant.

Mugg & Harper and Leigh O. Harper for Defendant and Respondent Meridith Stempinski.

---

[1] Judge Ottolia sustained defendants' demurrers to plaintiff's first amended complaint.  Commissioner Barkley awarded costs to defendants and is a temporary judge pursuant to California Constitution, article VI, section 21.

Orrock Popka Fortino Tucker & Dolen and Michael A. Fortino for Defendants and Respondents Pam Stearns, Virginia Pharris, Christina Amezola, Debbie Gunter, Emily Bares, Lisa Beauregard, Ana Grimes and Centennial High School Theater Boosters.

## I.  INTRODUCTION

Plaintiff and appellant Tonya Pinkins brought suit alleging various causes of action against defendants and respondents Meridith Stempinski, Pam Stearns, Virginia Pharris, Christina Amezola, Debbie Gunter, Emily Bares, Lisa Beauregard, Ana Grimes, and Centennial High School Theatre Boosters, relating to purported defamatory statements.  In an unpublished opinion filed August 21, 2012, we reversed the trial court's grant of defendants' special motion to strike plaintiff's complaint (anti-SLAPP motion) pursuant to Code of Civil Procedure[2] section 425.16 (the anti-SLAPP statute). Plaintiff now appeals from the trial court's order sustaining defendants' demurrers to plaintiff's first amended complaint without leave to amend and awarding defendants costs.  We find no error and affirm.

## II.  FACTS AND PROCEDURAL BACKGROUND

In our previous opinion in this case, we summarized the relevant factual background as follows:

"Defendant Centennial High School Theatre Boosters (Booster Club) was organized in 2008 to support the Centennial High School Theatre Arts Department. Centennial High School is a public school within the Corona-Norco Unified School

_____

[2]  Further undesignated statutory references are to the Code of Civil Procedure.

2

District.  Stempinski was the head of the theater department at Centennial High School and the faculty advisor to the Booster Club.  Stearns was the vice-president of ways and means of the Booster Club, Pharris was the treasurer, Amezola was the secretary, and Bares was the vice-president of publicity.  The other defendants attended the Booster Club meeting at which the events underlying Pinkins's complaint occurred.

"Pinkins was elected president of the Booster Club in October 2010.  The following month, the Booster Club agreed to produce and sell a compact disc (CD) of Christmas songs performed by students to raise funds.  Pinkins obtained permission for the CD production and sale from the school's vice-[principal] and from the assistant superintendent of the school district, and the board members of the Booster Club approved establishing a PayPal account to collect money from the CD sales and future fundraising events.  Pinkins and her husband, Eric Winter, using their own funds, worked with the students to record the CD.

"Winter obtained approval from the president of the high school football booster club to sell CDs at a football game on November 19, 2010.  That evening, Pinkins and four other CD committee members set up a booth to sell the CD.  Questions were raised as to whether Pinkins had violated the Booster Club by-laws by failing to get board approval to sell the CD at the football game.

"On November 22, 2010, Stempinski called a meeting of the Booster Club.  Her email stated that the agenda for the meeting was to discuss communication issues, protocol, rules, and 'what I feel needs to improve to help MY DEPARTMENT.'  (Orig. capitalization and underlining.)  Stempinski was not a board member of the Booster Club,

3

and under the club's bylaws, only the president was authorized to call a special meeting. Pinkins challenged the closed nature of the invitation.

"Defendants met at a Sizzler restaurant on November 29, 2010. Pinkins did not attend, but her husband did attend and recorded the meeting. At the meeting, statements were allegedly made that Pinkins had mishandled funds and that she had defamed the character of another board member. A motion was made to remove Pinkins as president of the Booster Club. The meeting went into closed session, and the board voted to remove Pinkins as president.

"Following the meeting, Stempinski sent Pinkins an email stating, 'I am sorry that you were not able to attend tonight's meeting. I do appreciate your husband being in attendance. I hope that he shared with you the information that was conveyed. He did leave before I requested that all of the information shared at the meeting stayed at the meeting. I would like to make that request to you and he [*sic*].' The minutes of the meeting were sent by mail to Pinkins and others. The minutes state: 'Ms. Stempinski called meeting to order. Stated that meeting was called to discuss issues that have been brought to her attention that were against by-laws. Only board members and committee chairpersons were asked to attend to discuss these issues.' On December 13, 2010, the minutes were again published for distribution to members of the Booster Club who had not been invited to attend the November 29 meeting. Stempinski disbanded the group on December 15, 2010." (*Pinkins v. Stempinski et al.* (Aug. 21, 2012, E053447) [nonpub. opn.] (*Pinkins I*).)

Plaintiff filed a complaint against defendants on December 13, 2010, alleging causes of action for conspiracy to defame, libel per se, slander per se, intentional infliction of emotional distress, negligent infliction of emotional distress, false light invasion of privacy, and civil rights violations. (*Pinkins I*, *supra*, E053447.) On January 13, 2011, defendants filed their anti-SLAPP motion, which the trial court granted on February 24, 2011. Plaintiff appealed, and on August 21, 2012, we filed our opinion reversing the trial court's judgment, finding that defendants had not shown plaintiff's causes of action to arise from activity protected by the anti-SLAPP statute. (*Pinkins I*, *supra*, E053447.)

Meanwhile, on January 24, 2011, plaintiff filed a first amended complaint, reasserting the same causes of action as the initial complaint, plus a new cause of action for interference with prospective economic advantage. On November 6, 2012, after our August 21, 2012, opinion became final and the remittitur issued, Stempinski filed a demurrer to the first amended complaint. The remaining defendants filed a demurrer on November 8, 2012. The trial court sustained the demurrers without leave to amend on January 25, 2013, and, after some administrative hiccups not relevant to the present appeal, entered judgment on February 22, 2013.

### III. DISCUSSION

#### A. Standard of Review

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (§ 430.10, subd. (e).) The facts pleaded are assumed to be true, and the only issue is whether they are legally sufficient to state a cause of

5

action.  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

With regard to whether the trial court abused its discretion in denying further leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank*, *supra*, 39 Cal.3d at p. 318.)  "Leave to amend is properly denied when the facts are not in dispute and the nature of the claim is clear, but there is no liability under substantive law."  (*Wilhelm v. Pray*, *Price*, *Williams & Russell* (1986) 186 Cal.App.3d 1324, 1330 (*Wilhelm*).)

**B.  Analysis**

*1.  Defendants' demurrers were timely filed.*

Plaintiff purports to quote section 430.40, subdivision (a), to state that "[a] demurrer to a complaint must be filed within 30 days after service of the complaint."  Defendants' demurrers were filed within 30 days after the issuance of the remittitur by

6

this court following the appeal regarding defendants' anti-SLAPP motion, but nearly two years after plaintiff filed her first amended complaint. Plaintiff argues on this basis that defendants' demurrers should not have been heard by the trial court.

A fundamental flaw in plaintiff's argument is that the statutory language actually reads as follows: "A person against whom a complaint or cross-complaint has been filed *may*, within 30 days after service of the complaint or cross-complaint, demur to the complaint or cross-complaint." (§ 430.40, subd. (a), italics added.) Thus, the statutory language uses the permissive term "may," not the mandatory term "must." Further, the permissive time limit set by section 430.40 "nominally applies only to a first round of demurrers," and "'[n]o statute or rule specifically provides a time limit for demurring to an *amended* complaint.'" (*McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 280 [quoting Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 7:139, p. 7-53].) It is doubtful, therefore, that the trial court erred in treating defendants' demurrers to plaintiff's first amended complaint as timely.

Moreover, section 473 provides that the court "may, in furtherance of justice, and on any terms as may be proper, . . . enlarge the time for answer or demurrer." (§ 473, subd. (a)(1); see *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 701 ["A court's inherent powers to control litigation and conserve judicial resources authorize it to conduct hearings and formulate rules of procedure as justice may require"].) Plaintiff has not attempted to articulate any manner in which she was prejudiced by the circumstance that defendants' demurrers to her first amended complaint were not filed until after we reversed the trial court's grant of defendants' anti-SLAPP motion. Neither does any

7

appear from our examination of the record.  A party's failure to object by demurrer or answer that a pleading does not state facts sufficient to constitute a cause of action does not waive that objection.  (§ 430.80.)  So if the court had opted not to rule on the merits of defendants' demurrers, it would inevitably have had to address the same issues at a later stage of the case—hardly an efficient use of judicial resources or the resources of the parties.

In short, the trial court did not err by considering defendants' demurrers.

2.  *Plaintiff failed to state any cause of action, so the demurrers were properly sustained.*

Plaintiff contends that the trial court erred by ruling the purportedly defamatory statements alleged in the complaint were insufficient to state a cause of action for defamation.  We find no error.

Plaintiff asserted causes of action for libel per se and slander per se, among others.[3]  "[T]he slander statute expressly limits slander per se to four categories of defamatory statements, 'including statements (1) charging the commission of crime, or (2) tending directly to injure a plaintiff in respect to the plaintiff's [profession, trade, or]

---

[3]  Defamatory publications made by "writing, printing, picture, effigy, or other fixed representation to the eye" are considered libel.  (Civ. Code, § 45.)  "Slander" refers to defamatory publications that are "orally uttered."  (Civ. Code, § 46.)  A statement that is defamatory on its face is libelous or slanderous "per se," and actionable without proof of special damage; if the defamatory character is not apparent from the face of the statement and requires an explanation of the surrounding circumstances to make its defamatory meaning clear, the statement is defamatory "*per quod*," and is not actionable without pleading and proving special damages.  (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541, p. 794.)

business by imputing something with reference to the plaintiff's [profession, trade, or] business that has a natural tendency to lessen its profits.'" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 382; see Civ. Code, § 46.) The statute defining libel per se is not explicitly so limited, but courts have held those same categories of defamatory statements also to constitute libel per se. (*Burrill v. Nair*, *supra*, at p. 383; see Civ. Code, § 45a.)

The first amended complaint alleges that defendants published two purportedly defamatory statements: that plaintiff had "mishandled funds" and that plaintiff had committed "defamation of character" of Pam Stearns. Neither of these alleged statements constitutes slander per se or libel per se. The statement that someone "mishandled funds" can refer as easily to negligent or accidental mishandling as the commission of a crime, and defamation is a civil matter, not a crime. Neither statement makes reference to plaintiff's profession, trade or business at all, or has a natural tendency to lessen its profits.[4] And neither alleged statement is of the sort that would necessarily, on its face, "expose[] any person to hatred, contempt, ridicule, or obloquy, or [cause] him [or her] to be shunned or avoided, or [have] a tendency to injury him [or her] in his occupation." (Civ. Code, § 45 [defining libel].) Defendant has pointed to no authority holding analogous statements to be defamatory per se, and we are aware of none.

---

**4** Nothing in the first amended complaint, or elsewhere in the record, indicates what plaintiff's profession, trade, or business might in fact be.

Plaintiff also has not pleaded facts providing a context for the alleged statements that might make their purportedly defamatory meaning apparent.[5] (See *Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 387 ["'In order to plead . . . ambiguous language into an actionable libel . . . it is incumbent upon the plaintiff also to plead an inducement, that is to say, circumstances which would indicate that the words *were understood* in a defamatory sense . . . .'"].) Plaintiff's first amended complaint contains no allegations of fact tending to show that the statement plaintiff had "mishandled funds" was intended to be and in fact understood to mean an accusation of theft or embezzlement, or some other defamatory meaning. To the contrary, the minutes of the Booster Club meeting at issue, which plaintiff attached to the first amended complaint, contain only expressions of concern regarding plaintiff's process of handling money—the necessity of having multiple Booster Club officers present and involved, notifying the treasurer in a timely way, and the like. These discussions of the club's standard procedures, and plaintiff's failure to follow them, are not fairly understood as accusations of criminal behavior by plaintiff, or any other potentially defamatory meaning. Further, plaintiff has cited no authority, and we are aware of none, describing a situation in which the statement that someone has "defamed the character" of someone has itself been held defamatory.

---

[5] In addition to her "libel per se" and "slander per se" causes of action, plaintiff also asserts a cause of action for "conspiracy to defame," which is not explicitly limited to defamation per se.

10

As noted, in addition to plaintiff's causes of action for one form or another of defamation, the first amended complaint also includes other tort causes of action that purportedly arise from the same two alleged defamatory statements. In her briefing on appeal, however, plaintiff makes no attempt to show these causes of action were not properly subject to demurrer, other than reciting them nearly verbatim, followed by the bare assertion that they were "properly plead[ed]." As such, plaintiff has forfeited any claim of error with respect to the trial court's ruling on those causes of action. (See *Paulus v. Bob Lynch Ford, Inc*. (2006) 139 Cal.App.4th 659, 685 [failure to raise an issue in opening brief and support it by argument or citation to authority waives the issue].) We therefore need not discuss in any detail the myriad of reasons why these purported causes of action fail to state a claim and were properly dismissed on demurrer.

In short, the trial court correctly determined plaintiff failed to plead facts sufficient to survive demurrer with respect to any of her asserted causes of action. We turn, therefore, to the issue of leave to amend.

*3. The trial court did not abuse its discretion by denying plaintiff leave to amend.*

In plaintiff's briefing on appeal, she makes no attempt to identify new, specific facts she is prepared to allege that would cure the defects in the complaint. Rather, she stands on the assertion that she "properly plead[ed] every element of every cause of action alleged in the first amended complaint . . . ." As such, she has not met her burden to show a reasonable possibility that the defects we discuss above could be cured by amendment. (See *Blank*, *supra*, 39 Cal.3d at p. 318.) Indeed, it appears that the primary defect in plaintiff's claims is that the undisputed facts at issue give rise to no liability

11

under substantive law.  (See *Wilhelm*, *supra*, 186 Cal.App.3d at p. 1330.)  Under these circumstances, the trial court did not abuse its discretion in sustaining defendant's demurrers without leave to amend.

   4. *The trial court did not err by awarding costs to defendants*.

   Plaintiff contends that the "law of the case" doctrine requires reversal of the trial court's award of costs.  She notes that our previous opinion in this case not only reversed the court's order granting defendant's anti-SLAPP motion, but also the trial court's award of attorney fees and costs.  (*Pinkins I*, *supra*, E053447.)  Plaintiff reads that ruling, in essence, as a finding that defendants shall not be entitled to fees or costs on any basis in this lawsuit.

   Not so.  Our reversal of the trial court's grant of defendants' anti-SLAPP motion undermined the basis for the trial court's previous award of attorney fees and costs to defendants pursuant to the anti-SLAPP statute.  (*Pinkins I*, *supra*, E053447.)  We reversed the trial court's award of fees and costs on that basis.  (*Ibid*.)  That reversal has precisely nothing to do with whether defendants are now entitled to costs under section 1021 et seq. having obtained a judgment of dismissal after the case was resolved on demurrer—a judgment which we here affirm.  Defendants are indeed entitled to their costs as prevailing parties.  (§§ 1032, subd. (b), 1033.5.)  Plaintiff has demonstrated no abuse of discretion with respect to the trial court's award of costs.

12

## IV.  DISPOSITION

The trial court's judgment in favor of defendants and award of costs to defendants are affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

J.

We concur:


RAMIREZ

P.J.

CODRINGTON

J.